UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
Eastern Division

2017 JUL -5 PM 2:51

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO

Sakho Maa Tem Heru
    Plaintiff

Case No. 5:17 cv 00247

Judge Sara L101

v.

United States, et al.,
    Defendants

Motion for Reconsideration,
Judicial Notice Fed. R. Civ. 201

---

Motion for Reconsideration and
Request for Judicial Notice, Fed. R. Civ. 201

---

Now comes this Plaintiff, Sakho Maa Tem Heru, pursuant to
U.N. IPO # 2421, 215/93, "Sui Juris", in Propria Persona, hereby
moves this court to reconsider it's Opinion rendered 6/2/17
and give "Judicial Notice" to undisputed facts and matters of
public record. Judicial Notice is a tool which the court and
parties may use to establish certain facts without presenting
evidence. Von Grabe v. Sprint PCS, 312 F. Supp. 2d 1285, 1311 (S.D. Cal 2004)
    Pursuant to Rule 201 of the Federal Rules of Evidence, a
District Court may, sua sponte, take Judicial Notice of facts
that are not subject to reasonable dispute and either generally
Known in the community or capable of accurate and ready
determination by reference to sources whose accuracy
cannot be reasonably questioned.

1 of 13

Fed. R. Evid. 201 (b),(c): A district court may take judicial notice at any stage of the proceeding, see also Zepeda, 705 F.3d 1064, While a district court may not take judicial notice of a fact that is subject to reasonable dispute, the court may take judicial notice of undisputed matters of public record. see Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001)

On pg. 2, paragraph 2 of this courts opinion, this court acknowledges Plaintiff's Declaration of Indigenous Native American Status:
" Plaintiff states that he is an Indigenous Native American with Olmec, Ute, Cherokee, and Blackfoot Ancestry, and also claims "Free Moorish" Ancestry."

In support of this claim Plaintiff attached numerous documents into the public record. 1). Ex# 1(a), Nationality Documents and Seal, proof of Plaintiff's Citizenship from United Washitaw de Dugday moundyah Muur Nation via U.N. IPO # 2421, 215/93, and Ex. 1(c) Aboriginal Certificate of Live Birth (filed 2/19/16) in Bladen Co. S.C. Superior Court, also (filed 9/10-11/16) with the Ohio Govenor, Ohio Secretary of State, and Ohio Attorney General 2). Sakhu Maa Tem Heru's UCC-1 financing statement, file # OH00204856382 (filed 10/13/16)
3). Identification from the Ohio Department of Rehabilitation and Corrections public records of my Native American Status
4). Trademark/Copyright on file with the Ohio Sec. of State, see UCC-1.

In addition to the above undisputed matters of public record, Plaintiff now adds (Ex#19) Results of Sakhu Maa Tem Heru's Ancestry Composition from 23 and Me, maid available May 25, 2017 "Proof" of Plaintiff's Olmec/Maya, Pima, Native American

Ancestry, as well as North & West African "Moorish" Ancestry. The Pima Indians of Arizona are a federally recognized tribe ( Salt River Pima Maricopa Indian Community of the Salt River Reservation) which are presumptively entitled to Sovereign Immunity, see 74 Fed. Reg. 40218, 40221: United States v. Zepeda 705 F. 3d 1052, 1064 ( 9th Cir. 2013)( as a general matter, the Bureau of Indian affairs list of federally recognized tribes is a proper subject of Judicial Notice, even on Appeal).

Plaintiff requests this Court take Judicial Notice of the following "Facts"

1). Sakhu Maa Tem Hero is an Indigenous Person of Native American and African Heritage.

2). Sakhu Maa Tem Hero is a blood descendant from a federally recognized Indian Tribe.

3). Sakhu Maa Tem Hero properly corrected the record by notifying the Tuscarawas Co. Common Pleas Court, Ohio Governor, Ohio Atty. General, Ohio Sec. of State, that his True name is Sakhu Maa Tem Hero and as the Real Party of Interest all further proceedings are to be conducted in that name.

4). Sakhu Maa Tem Hero is a Citizen of a Foreign state

5). U.S. District Courts have Original Jurisdiction over State Courts in both Civil and Criminal Cases involving Native Americans and Citizens of Foreign Nations.

6). The Defendants have failed to respond to Plaintiff's responsive Pleadings Civ. R. 8(d) filed 9/12/16 Denying and Challenging the Defendants Subject Matter Jurisdiction over Sakhu Maa Tem Hero.

In its Opinion filed 6/2/17 on pg. 3-4 this Court uses 28 U.S.C. 1915(c) to dismiss the bulk of my claims for failing to state a claim which relief can be granted. Plaintiff request this Court to reconsider its Judgment for the following reasons. The 1st Amend. of the US Constitution supports Plaintiff's Right to petition the Government for Grievances and the 6th Amend. of the US Const. guarantees Plaintiff's Right to Know the Nature and Cause of any Seizure/Detention being used to restrict his Liberty.

On pg. 4, Section C. I was faulted by this Court for using 28 U.S.C. &1441 attempting to remove a criminal case with a Statute only for civil cases. In my defense, as of this time no County, State, or federal agency are on the record with any claim against Sakho Maa Tem Heru of any nature (Civil or Criminal)

Complaint is not automatically frivolous under 28 U.S.C.&1915 merely because it fails to state a claim under Rule 12(b)(6): to be dismissed as frivolous, ~~arguable~~ complaint must lack arguable, or factual legal basis and if it does, it should go forward so that defendants can answer and Plaintiff can receive notice of possibility of Rule 12 dismissal and need to amend complaint in order to properly state legal claim. Wilson v. Rackmill 878 F.2d 772 (1989, CA 3 Pa).

On page 17 of Plaintiff's Complaint Case No. 5:17 cv 00247 Plaintiff made the following request:

"any defects this Court may find in this Complaint Plaintiff requests from this Court the opportunity to amend this complaint to bring forth all claims in the proper format."

Until the Defendants, the State of Ohio, or the Tuscarawas Co.
Common Pleas Court, goes on record and proves that it has Subject
Matter Jurisdiction over Sakho Maa Tem Hero. Plaintiff requests
from this court not to presume any such Jurisdiction. Any
mention from this Plaintiff of Case No. 2007 01 0145 was not to
re-litigate that issue but to bring it to this Courts attention that
the Judgment from that case is Void ab Initio, Patton v. Diemer, 35
Ohio St. 3d 68, 518 N.E. 2d 941, 1988 Ohio Lexis 117 (1988).

   If this court is holding the position that my case cannot be
removed to the federal court through 28 U.S.C. § 1441, then I
formerly request to amend that portion of the complaint and
supplant 28 U.S.C. § 1441 with 28 U.S.C. 1455 (Removal of Criminal
Prosecutions). If this Court should still find error, then I request
an Evidentiary Hearing to present further facts justifying Original
Federal Jurisdiction in this matter.

   Under Ex Parte Young, 209 U.S. at 149-45 it was found that
state officials who are about to or threaten to commence
proceedings either of a civil or criminal nature in violation of the
Federal Constitution may be enjoined by a Federal Court of Equity
from such action. Also, Verizon Md. Inc. v. Pub. Serv. Comm'n, 535
U.S. 635, 645 (2002) (stating that a complaint that alleges an
ongoing violation of federal law and seeks relief properly
characterized as prospective states a proper claim under Ex Parte
Young (quoting Idaho v. Coer d' Alene tribe, 521 U.S. 261, 296
(1997).

   To be clear, the roots of this Complaint stem from the Defendant's
failure to respond to Plaintiff's Challenge & claim that the
Tuscarawas Co. Common Pleas Court lacks Subject Matter

Jurisdiction to adjudicate any proceeding in his official Indigenous Capacity as a Native American, also, as a Citizen of a Foreign Nation. To prove that I wasn't attacking the Conviction from case no. 2007 01 0145, and in fact, I had no idea of the cause for my Arbitrary Detention, I stated the following in Ex.#2, paragraph 6 (9/12/16)

6). "I demand all Unconstitutional, warrants, Indictments, suits (mis-represented) Bill of Exchange : Case no. 2007 CR 01 0145, and any other Order of Action associated with it, them, to be dismissed and expunged for the record on its face and merit: or otherwise be brought before a legitimately - delegated and Competent "Court of Law" of International Jurisdiction / Venue."

Clearly by my Statement, "any other Order of action", my intent was not an attack on a conviction stemming from case no. 2007 01 0145 but was an attempt to understand the Cause for my Arbitrary Detention. In Ohio Law "Jurisdiction" means the courts statutory or Constitutional power to adjudicate the case Morrison v. Steiner (1972) 32 Ohio St. 2d 86, 87, 61 O.O. 2d 335, 290 N.E. 2d 841: Steel Co. v. Citizens for a better Environment (1998) 523 U.S. 83, 89, 118 S. Ct. 1003, 140 L. Ed 2d 210

The term encompasses jurisdiction over the Subject Matter and over the person State v. Parker, 95 Ohio St. 3d 524, 2002-Ohio-2833, 769 N.E. 2d 846. Because Subject Matter Jurisdiction goes to the power of a court to adjudicate the merits of a case, it can never be waived and may be challenged at anytime. United States v. Cotton (2002) 535 U.S. 625, 630, 122 S. Ct 1781, 152 L. Ed. 2d 860:

; State ex rel. Tubb Jones v. Suster (1998) 84 Ohio St, 3d 70, 75, 1998 Ohio 275, 701 N.E. 2d 1002. Also in Cotton, 535 U.S. 625 ( defects in Subject Matter Jurisdiction require correction regardless of whether the error was raised In District Court).

Once I identified myself properly to the Defendants in accordance with Civ. R. 8(a), then made a lawful challenge to the Tuscarawas Co. Common Pleas Courts Subject Matter Jurisdiction Civ. R. 12(B)(1), Civ. R. 12(H)(3) mandates the Court dismiss the case. When jurisdiction ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case Steel Co. v. Citizens for a better Envt, 523 U.S. 83.

It is clear from the above that by failing to respond to my Affidavits/Complaints filed 9/12/16 the Defendants violated Federal law and impeded Plaintiff from exercising Rights guaranteed by the Constitution. Both Ohio and Federal Rules of Civil Procedure 7(a) say that for every Complaint there is to be an answer. Both jurisdictions are also clear on the fact that, failure to respond to a responsive pleading is an admittance to any facts or claims brought by a moving party FRCP 8(b)(6), Ohio Civ. R. 8(D).

Plaintiff was clear in Ct.* 1(a), originally filed 9/12/16, but also supported in Afroyim v. Rusk 387 U.S. 253, 267 (1967), as a Native American Moor my status is that of a nonresident Alien. One who is Alien at the time of bringing suit, may sue in Courts of the United States Cook v. Lillo 103 U.S. 792, 13 Ohio 792, 26 L. Ed 460. Also, Straub v. A.P. Green, Inc. (1994, CA 9 Ariz) 38 F. 3d 448, 94 CDOS 7908, 94 Daily Journal DAR 14603 (Foreign Sovereign Immunity Act is applicable where defendant is Foreign State (or agency or instrumentality of Foreign State) at time

lawsuit is filed, irrespective of whether defendant was foreign state at time of injury which gave rise to lawsuit. Again, in Pere ex rel. Pere v. Nuovo Pignone, Inc. (1998, CA5 La) 150 F.3d 477, Cert den (1999) 525 U.S. 1141, 143 L. Ed 2d 42, 119 S. Ct. 1083 ( FSIA covers entity that is now private but that was state owned at the time of disputed events.

   In its Judgment Entry from 6/2/17 this court failed to address Plaintiff's undisputed claim that the federal courts have Original Jurisdiction over the Subject Matter of any claim, Criminal or Civil as it relates to the Natural Born Sakhu Maa Tem Heru. The Indian Sovereignty Doctrine derives the federal governments protection of the authority of Indian Tribes from competing state authority.

   The Supreme Court describes the Indian Sovereignty Doctrine which historically gave the States no role to play within a Tribes affairs. As the backdrop against which applicable Statutes or Treatise affecting Indians must be read see Okla. Tax Comm'n v. Sac & Fox Nation 508 U.S. 114, 123-24 (1993)(quoting McClanahan v. Ariz. State tax Comm'n 411 U.S. 164, 168, 172

   The federal governments power in relation to Indians is derived from Art. I. sec. 8, cl. 3 of the United States Constitution, Perrin v. United States, 232 U.S. 478 and from necessity of giving uniform protection to a dependant people. In United States v. Kagama 118 U.S. 375, 385 (1886), the Supreme Court upheld the act, holding that the United States could exercise criminal jurisdictions over Indians and that Constitutionally such power rested with the federal, not state government. In this instance Plaintiff invokes the protectorate obligation the Federal Courts has to protect the Rights of Native Americans from state authority.

Art. 1. sec. 8, cl. 3. of the United States Constitution, better known as the "Commerce Clause" states: To regulate Commerce with Foreign Nations, and among the several states, and with Indian Tribes." Commerce with Indian Tribes means commerce with individuals composing those Tribes. _United States v. Holiday 70 U.S. 407, 3 wall 407, 18 L. Ed 182._

## Commercial Claim

In it's Opinion, this Court improperly dismissed my claim without addressing my Commercial Claims. In paragraph 8 in Ex#2 Plaintiff made the following statement:

8). "I Sakhu Maa Tem Hero, Ex. Rel. SEKOU MUATA IMANI, having declared and established (see exhibit)A), now officially claim, "Sui Juris" status in connection with both my Property and Name. I demand a Certified copy with my signed authorization of any and all documents, Contracts, bonds, being "held in due course" pursuant to UCC. 3-305 UCC 3-305.2, UCC 3-305.52, that create any legal disability resulting from a contract or commercial agreement which is being "held in due course", by a fellow citizen, or by any agency of the federal, state, county or municipal corporate government."

Also, in Ex#5, paragraphs 1-12, plaintiff raised the following claims:

2). the Judgment Ordered by Judge Elizabeth Thomakos on 5/8/08 for the payment of mandatory fines of $31,800 is an act of Fraud an is a violation of my Contract Rights.

6). Illegal Seizure of Property of Secured Party Creditor Sakhu Maa Tem Heru

8) Improper use of Negotionable Instrument (Indictment) to restrict the Liberty of the Natural Born Sakhu Maa Tem Heru.

As the registered Secured Party Creditor with a recorded lien on all of Debtor's assets (Ex #12 Security Agreement & Ex #10 Trademark Copyright) with the Ohio Sec. of State (UCC-1, no. OH00204856382), I notified the Defendants that as Creditor, I have a Security interest in Seized goods, and unauthorized use of Trademark/Copyright name "SEKOU MUATA IMANI". All bonds (bid bonds, performance bonds) being held in due course, as well as any unauthorized charges to any trust accounts of Debtor SEKOU MUATA IMANI see Ex #12.

As a defense to any fraudulent charges, civil, criminal, or commercial, I cited UCC-3-305. On 11/3/16 Plaintiff filed a preliminary injunction in the Tuscarawas Co. Common Pleas clerk of Court to cease and desist further injury to this Plaintiff, which Defendants failed to respond to as well (Destruction and Illegal seizure of Property, copyright infringment violations).

As True Holder in due Course, I have Rights as "Creditor" to identify all parties involved in any Illegal Seizures of my goods, as well as the Right to sue in Civil Court to assign liability and receive compensation. Invoking the "Commerce Clause", Plaintiff requests this claim be allowed to proceed to discovery.

In it's Opinion Ex #, this court also improperly attached my claim under 42 USC 1983, with its procedural limitations, with my seperate claim, 28 USC 1350.

## The Alien Tort Statute

The Alien Tort Statute 28 USC 1350 states simply: the statute is jurisdictional and does not create an independant cause of action, Romero v. Drummond Co., Inc., 552 F.3d 1303, 1315 (11th Cir. 2008) ("the ATS" jurisdictional grant is best read as having been enacted on the understanding that the Common Law would provide a cause of action for the modest number of International law violations with a potential for personal liberty at the time" Sosa v. Alvarez-Machain, 542 U.S 692, 724, 124 S.ct 2739, 2761, 159 L. Cd 2d 718 (2004).

To obtain relief under the ATS, Plaintiff must be 1). an Alien 2). suing for a Tort, which was 3). Committed in violation of International law. Aldana, 416 F.3d at 1246 (citing Abebe-Jira v. Negewo, 72 F.3d 844, 847 (11th Cir. 1896). I, Sakhu Maa Tem Heru submitted undisputed facts into the public record as proof of my status as a non-resident Alien, not (Subject) to the jurisdiction of Corporate United States.

On 3/16/17 this Plaintiff filed a complaint in the United States District Court under the ATS 28 USC 1350 listing the following Torts against the United States, the State of Ohio, the Tuscarawas Co. Common Pleas Court, the Tuscarawas Co. Prosecutors Office and various officers and employees

1. Genocide /Denationalization
2. Prolonged Arbitrary Detention
3. Kidnapping
4. Torture
5. Denial of Fair Trial
6. Discovery Violations
7. Denial of Right to Counsel
8. Denial of Right to Self Representation

All of the listed above are Violations of Customary International Law as noted in, Universal Declaration of Human Rights, the Covenant on Civil and Political Rights, and the U.N. Declaration on the Rights of Indigenous Peoples. Based on the above, "Common Law" an "International Law" application to any procedural filing requirements, Plaintiff requests this claim be allowed to proceed or grant leave to amend.

In regards to this Plaintiff's claims against the Religious Service Administrator Michael Davis, and the ODRC Chief Inspector, On pg. 6 of its Opinion this Court stated: "Plaintiff does not allege any facts to suggest the basis for his claims against the ODRC officials. Plaintiff cannot establish the liability of any Defendant absent a clear showing that the Defendant was personally involved in the act."

To demonstrate that the above mentioned Defendants were personally involved with my claim I submit, Ex.# 20 Decision of the RSA Request for Accommodation of Religious Practice, Ex.# 21 Decision of Chief Inspector on a Grievance Appeal no. Beci-01-17-000124, Ex.# 22 Decision of Chief Inspector on a Grievance Appeal no. Beci-01-17-000114

In light of the above this Plaintiff requests that this Court reconsider it's Opinion from 6/2/17 for the following reasons

1). The Defendants failed to respond to Plaintiff's Civ. R. 12(H)(3) demand for proof of Subject Matter Jurisdiction, leaving Plaintiff unaware of the Nature & Cause of any accusations or charges being used to restrict his liberty. Until the State of Ohio or the Tuscarawas Co. Common Pleas Court certifies criminal charges into the record against the Real Party in Interest Sakhu Maa Tem

Here, Plaintiff requests this Court to construe all undisputed facts in favor of Plaintiff and enjoin the State of Ohio from committing any further injuries to this Plaintiff

2). This Court improperly reviewed my 42 USC §1983 claim as an attack on a conviction instead of a Civil Suit for claims stemming from 9/18/16

3). This Court improperly dismissed my claim under the ATS 28 USC §1350 without addressing the merits of my claim and the question of federal jurisdiction for a tort, raised by an "Alien" in violation of the law of Nations.

4). This Court failed to address my Commercial Claims.

Any further defects in this complaint case no. 5:17 cv 00247 Plaintiff requests leave to Amend or be granted an Evidentiary Hearing.

Respectfully Submitted

Sakhu Maa Tem Heru
Sakhu Maa Tem Heru "Sui Juris"
c/o P.O. Box 540
St. Clairsville, OH 43950

 23andMe

Sakhu Maa Tem Heru
Ancestry Composition

## Ancestry Composition

Your genome tells the unique story of your ancestry: where your ancestors lived, when they contributed to your family tree, and how their DNA was passed down to you through your parents. For more information about your results, see Frequently Asked Questions.

  

### Sakhu Maa Tem Heru                                                100%

| Sub-Saharan African | **84.6%** |
|---|---|
| West African | 78.5% |
| Central & South African | 3.0% |
| Broadly Sub-Saharan African | 3.1% |

| European | **14.4%** |
|---|---|
| Northwestern European | 10.1% |
| British & Irish | 4.9% |
| Broadly Northwestern European | 5.2% |
| Southern European | 1.2% |
| Broadly Southern European | 1.2% |
| Eastern European | 0.5% |
| Broadly European | 2.5% |

| East Asian & Native American | **0.4%** |
|---|---|
| Native American | 0.2% |
| Southeast Asian | 0.1% |
| Broadly East Asian & Native American | 0.1% |

| Middle Eastern & North African | **0.2%** |
|---|---|
| North African | 0.2% |

| Unassigned | **0.4%** |
|---|---|

Exhibit #19

# Your Ancestry Timeline

How many generations ago was your most recent ancestor for each population?



## How to interpret this result

- This module uses your Ancestry Composition results to estimate the generation range where you are likely to have had a single relative who descended from a single population.

- These results may be helpful for learning about your genealogy, in figuring out from which ancestors a particular ancestry may have been inherited, or for piecing together the history of their likely migrations.

- For technical details on how this feature works, read our white paper.

## Your Ancestry Composition Chromosome Painting

These are your chromosomes; we've painted them with your Ancestry Composition results. The first 22 are called autosomes and come in pairs of two each represented by one of the colored horizontal lines in the graphic below. Chromosomes have different lengths, and are named 1 through 22, when sorted by size (scientists are not very creative). Lastly, we also look at ancestry on your X chromosome: two copies like the autosomes if you are female, and only one copy if you're male (that you got from mom).



| Sakhu Maa Tem Heru | 100% |
|---|---|
| ● **Sub-Saharan African** | **84.6%** |
| ● West African | 78.5% |
| ● Central & South African | 3.0% |
| ● Broadly Sub-Saharan African | 3.1% |
| ● **European** | **14.4%** |
| ◉ Northwestern European | 10.1% |
| ● British & Irish | 4.9% |
| ● Broadly Northwestern European | 5.2% |
| ● Southern European | 1.2% |
| ● Broadly Southern European | 1.2% |
| ● Eastern European | 0.5% |
| ● Broadly European | 2.5% |
| ● **East Asian & Native American** | **0.4%** |
| ⸱ Native American | 0.2% |
| ◎ Southeast Asian | 0.1% |
| ● Broadly East Asian & Native American | 0.1% |
| ● **Middle Eastern & North African** | **0.2%** |
| ● North African | 0.2% |
| ⸱ **Unassigned** | **0.4%** |
| ⸱ **No Data Available** | -- |

Genotype data is not available for these regions because their genetic sequence is highly repetitive, and therefore not readily tested via current genotyping technology.

3 of 6

Broad regional assignments: Sometimes a piece of DNA matches a regional population but cannot be assigned to a more specific population. In such a case we assign the DNA "broadly" to that regional population rather than a specific one.

Do more with your Ancestry Composition results.

- Contribute to research and help us understand patterns of genetic variation around the world.
- Learn more about the reference populations we use to determine your result.
- Join the discussion with other 23andMe customers interested in Ancestry Composition results.


## Scientific Details

We determine your Ancestry Composition by comparing your DNA to public and private reference data.

To determine your Ancestry Composition, we use an algorithm that looks at short, non-overlapping segments of your DNA. We compare each segment of your DNA to reference DNA sequences. We have defined 31 ancestry populations from around the world using reference datasets that include over 10,000 individuals with known ancestry. When a segment of your DNA matches the reference DNA from a specific population with a high degree of certainty, the segment is assigned to that population. Sometimes the segment matches reference DNA from several populations, in which case it is assigned to a broad ancestry (e.g. Northwestern European). The results of all of these assignments are then tallied across your genome to determine your Ancestry Composition. Read more about how we assign your DNA to different ancestries



This table shows the number of reference individuals used to define each broad ancestry population. The reference datasets are made up of over 10,000 people, including publicly available data from the Human Genome Diversity Project, HapMap, and the 1000 Genomes project, as well as a large number of 23andMe customers who have consented to participate in research.

| Ancestry Composition Populations | 23andMe Customers | Public Data* | Total Individuals |
|---|---|---|---|
| **East Asian and Native American** | 808 | 560 | 1368 |
| Native American (Colombian, Karitiana, Maya, Pima, Surui), East Asian, Japanese, Korean (South Korean), Yakut, Mongolian (Daur, Hezhen, Mongolian, Oroqen, Tu, Xibo), Chinese (Chinese, Han, Hong Kongese, Taiwanese), Southeast Asian (Burmese, Cambodian, Indonesian, Lao, Malaysian, Filipino, Thai, Vietnamese) | | | |
| **European** | 6421 | 421 | 6842 |
| Southern European, Italian (Italian, Northern Italian, Tuscan), Balkan (Albanian, Bosnian and Herzegovinian, Bulgarian, Croatian, Greek, Macedonian, Maltese, Montenegrin, Romanian, Serbian), Sardinian, Iberian (France Basque, Portuguese, Spanish), Northwestern European, British and Irish (Irish, United Kingdom), French and German (Austrian, French, German, Belgian, Dutch, Swiss), Scandinavian (Danish, Norwegian, Swedish), Finnish, Ashkenazi, Eastern European (Belarusians, Czechs, Hungarians, Polish, Russian, Slovak, Slovene, Ukrainian) | | | |

| | | | |
|---|---|---|---|
| **Middle Eastern and Noth African**<br>Middle Eastern(Armenian, Azerbaijani, Cypriot, Georgian, Druze, Iranian, Iraqi, Lebanese, Turkish, Syrian), **North African**(Algerian, Bahrani, Bedouin, Egyptian, Jordanian, Kuwaiti, Moroccan, Mozabite, Palestinian, Saudi Arabian, Tunisian, Emirati, Yemeni) | 550 | 176 | 726 |
| **Oceanian**<br>Broadly Oceanian (Nan Melanesian, Palauan, Tongan) | 3 | 36 | 39 |
| **South Asian**<br>Broadly South Asian(Afghan, Balochi, Bangladeshi, Bahui, Burusho, Hazara, Indian, Kalash, Makrani, Nepalese, Pakistani, Pathan, Sindhi, Sri Lankan, Uygur) | 207 | 615 | 822 |
| **Sub-Saharan African**<br>West African(Bantu, Cameroonian, Ghanian, Ivorian, Liberian, Luhya, Mandenka, Nigerian, Sierra Leonean, Yoruba), **East African**(Eritrean, Ethiopian, Maasai, Somali), **Central and South African**(Biaka Pygmies, Mbuti Pygmies, San) | 228 | 393 | 621 |

*\* Public Reference Set includes HGDP, 1000 Genomes, HapMap3*

## Change Log

Your report may occasionally be updated based on new information. This Change Log describes updates and revisions to this report.

Date          Change

May 25, 2017 Your genetic results were first available from 23andMe.

Oct. 21, 2015 Ancestry Composition report created.

Sakhu Maa Tem Heru's Report, printed on 2017-05-27 UTC

 23andMe

© 2017 23andMe, Inc. All Rights Reserved.

# Ohio | Department of Rehabilitation & Correction

John R. Kasich, Governor
Gary C. Mohr, Director

Decision of the Religious Services Administrator
Request for Accommodation
Of Religious Practice

Sekau Imani #575-988
Belmont Correctional Institution
P.O. Box 540
St. Clairsville, OH 43950

RELIGIOUS AFFILIATION:  Neo Egyptian Kemetism

You have requested accommodation of the following practice based upon the reason indicated:

Request to have a vegetarian meal for religious reasons.

Your request states a:

X    Religious Issue
     Non-Religious Issue

It is the decision of the Religious Services Administrator that the request for Accommodation of Religious Practice should be:

     Approved
X    Not Approved

Reason:
Your request, *Sekau Imani #575-988,* for a vegetarian meal is denied. DRC currently provides a reasonable meal accommodation.

Signature: _____ Date: _____February 21, 2017_____

Michael Davis, Ph. D
Religious Services Administrator

Tracking Process
- ❑  Chaplains reviews request and makes recommendation
- ❑  Request is reviewed by Chaplain, DWSS, and DWO/Designee.
- ❑  Accommodation in forwarded to Warden for Warden's response.
- ❑  Warden's decision is forward back to inmate and Chaplain's office is copied.
- ❑  Inmate receives decision and may appeal if desired.
- ❑  Warden forwards appeal to OOP for Religious Services Administrator decision.
- ❑  Religious Services Administrator reviews in consultation with Legal, Chief Inspector, STG as needed.
- ❑  The final decision is made by the Religious Services Administrator (copy of final decision is filed).
- ❑  The decision is returned to the Institutional Chaplain, the DWSS, and Warden is copied and inmate is notified
     C:      Warden, Chaplain, Inmate's On Base File and Inmate

Exhibit 20

# Ohio | Department of Rehabilitation & Correction

**John R. Kasich, Governor**
**Gary C. Mohr, Director**

Decision of the Religious Services Administrator
Request for Accommodation
Of Religious Practice

Sekau Imani #575-988
Belmont Correctional Institution
P.O. Box 540
St. Clairsville, OH 43950

RELIGIOUS AFFILIATION:  Neo Egyptian Kemetism

You have requested accommodation of the following practice based upon the reason indicated:

Request to have a vegetarian meal for religious reasons.

Your request states a:

**X**      Religious Issue
          Non-Religious Issue

It is the decision of the Religious Services Administrator that the request for Accommodation of Religious Practice should be:

          Approved
**X**     Not Approved

Reason:
Your request, *Sekau Imani #575-988,* for a vegetarian meal is denied. DRC currently provides a reasonable meal accommodation.

Signature: _____ Date:    March 3, 2017 _____

Michael Davis, Ph. D
Religious Services Administrator

Tracking Process
- ❑ Chaplains reviews request and makes recommendation
- ❑ Request is reviewed by Chaplain, DWSS, and DWO/Designee.
- ❑ Accommodation in forwarded to Warden for Warden's response.
- ❑ Warden's decision is forward back to inmate and Chaplain's office is copied.
- ❑ Inmate receives decision and may appeal if desired.
- ❑ Warden forwards appeal to OOP for Religious Services Administrator decision.
- ❑ Religious Services Administrator reviews in consultation with Legal, Chief Inspector, STG as needed.
- ❑ The final decision is made by the Religious Services Administrator (copy of final decision is filed).
- ❑ The decision is returned to the Institutional Chaplain, the DWSS, and Warden is copied and inmate is notified
    - C:        Warden, Chaplain, Inmate's On Base File and Inmate

# Decision of the Chief Inspector on a Grievance Appeal

| Inmate: | | Institution: | |
|---|---|---|---|
| IMANI, SEKOU M | | BECI | |
| **Number:** | | **Grievance No.:** | |
| A575988 | | BECI-01-17-000124 | |
| **Date:** | | | |
| 03/22/2017 | | | |

The office of the Chief Inspector is in receipt of your notification of grievance, the disposition of that grievance, and your appeal to this office. A review of your appeal has been completed. The decision of the Inspector is hereby

**Affirmed**

Exhibit 21

This office is in receipt of your appeal regarding your request for a religious accommodation while incarcerated at Belmont Correctional Institution (BECI). In summary, you claim that you are being improperly denied kosher meals as required by your religion; you provide information to support your position that you are entitled to kosher meals and state that you have not been provided a reason why you are denied. You believe you are being subjected to torture for having to eat non-kosher meals and will seek an "adequate remedy".

This office conducted a review of your Informal Complaint Resolution, Notification of Grievance, Disposition of Grievance, Request for Religious Accommodation dated 4-25-2016, Response to Request for Religious Accommodation dated 5-9-2016, Decision of the Religious Services Administrator dated 6-13??2016, DRC policy 72-REG-02 (Religious Accommodations), DRC Policy 72-REG-01 (Institutional Religious Services) and Administrative Rule 5120-9-31 (Inmate Grievance Procedure). Please be advised that the Inmate Grievance Procedure, as outlined in AR 5120-9-31, is not applicable in cases where there exists an appeal process; in this instance Religious Services at Operation Support Center. This office has discovered you were provided the process to request a religious accommodation and were denied in accordance DRC policy 72-REG-02. This office does not find a violation of policy or rule in this matter.

A review of your appeal has been completed and the decision of the Inspector is hereby AFFIRMED.

No further action will be taken in regard to this appeal at this time.

| Signature: | Title: |
|---|---|
| | ASSISTANT CHIEF |

# Decision of the Chief Inspector on a Grievance Appeal

| Inmate: | | Institution: | |
|---|---|---|---|
| | IMANI, SEKOU M | | BECI |
| **Number:** | | **Grievance No.:** | |
| | A575988 | | BECI-01-17-000114 |
| **Date:** | | | |
| | 04/07/2017 | | |

The office of the Chief Inspector is in receipt of your notification of grievance, the disposition of that grievance, and your appeal to this office. A review of your appeal has been completed. The decision of the Inspector is hereby

**Affirmed**

Exhibit 20

This office is in receipt of your appeal regarding the display of your religious affiliation while incarcerated at Belmont Correctional Institution (BECI). In summary, you claim you were ordered to remove your black fez, which was confiscated, when you were at chow at BECI on 1-1-2017; you believe this action violated your right to practice your religious beliefs.

This office conducted a review of your Informal Complaint Resolution, Notification of Grievance, Disposition of Grievance, DRC Policy 72-REG-01 (Institutional Religious Services), DRC policy 72-REG-02 (Religious Accommodations), Administrative Rule (AR) 5120-9-55 (Contraband) and current DRC Religious Accommodations. In analysis of this information, it is determined the Inspector rendered the appropriate decision; there is no violation of policy or rule with respect to your concerns. You are required to follow requirements outlined in DRC policy 72-REG-02 if you choose to possess items related to your religion; there is no documentation provided where you followed procedures as established in DRC policy 72-REG-02 and therefore the confiscation of the item was in accordance with AR 5120-9-55.

A review of your appeal has been completed and the decision of the Inspector is hereby AFFIRMED.

No further action will be taken in regard to this appeal at this time.

| Signature: | Title: |
|---|---|
| | ASSISTANT CHIEF |

DRC4428 (09/06) copy: Inspector of Institutional Services

Page 1 of 1